UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAMP SCANDINAVIA AB, PETER
ALLARD HOLDING AB, and LIGHT
WEIGHT SUPPORT AB,                                    Case No. 07-14925

    Plaintiffs/Counter-Defendants,                  Honorable John Corbett O'Meara

v.

TRULIFE, INC., and TRULIFE, LTD.,

    Defendants/Counter-Plaintiffs.
_____/

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFFS' JANUARY 23, 2009 MOTION FOR PARTIAL SUMMARY JUDGMENT
AND DENYING DEFENDANTS' APRIL 6, 2009 MOTION TO AMEND ANSWER**

    This matter came before the court on Plaintiffs' January 23, 2009 motion for partial summary judgment. Defendants filed a response March 3, 2009; and Plaintiffs filed a reply March 13, 2009. On April 6, 2009, Defendants filed a motion to amend their answer. Plaintiffs filed a response April 20, 2009; and Defendants filed a reply April 29, 2009. Oral argument on the motion for partial summary judgment was heard April 9, 2009.

**BACKGROUND FACTS**

    This patent infringement case concerns an "ankle-foot orthosis," a type of orthopedic brace. A patient wears an ankle-foot orthosis to correct medical conditions which weaken or otherwise restrict the full use of the patient's foot or ankle. They are often worn by patients who have lost mobility in their feet because of nerve damage. Before the work of Dr. Stig Willner and Mr. Karl Engdahl, the inventors of the accused patent, ankle-foot orthoses were rigid and stiff and did not flex

or bounce back while being worn. Willner and Engdahl's version provides better support and design.

Plaintiff Camp Scandinavia AB, a world-wilde distributor and marketer of health care products, is the exclusive licensee of the asserted patent. Plaintiffs Peter Allard Holding AB and Light Weight Support AB are the assignees of the asserted patent. All three plaintiffs are Swedish corporations.

Defendants Trulife, Inc. and Trulife Ltd. are part of Trulife Group Limited, a private holding company based in Ireland. Trulife, Inc. is the U.S. importer and distributor of the accused orthoses and is a Michigan corporation with its principal place of business in Jackson, Michigan. Trulife, Ltd. is a U.K. corporation that manufactures and exports the accused orthoses to the United States. For purposes of this order, Plaintiffs will be referred to as "Camp" and Defendants as "Trulife."

At issue is U.S. Patent No. 5,897,515 ("the '515 patent"). The patent is comprised of 15 claims, and the parties previously sought claim construction for eight terms. The court issued an order regarding those terms December 15, 2008.

In its current motion for partial summary judgment, Camp asserts that because Trulife's affirmative defenses of laches and equitable estoppel are premised on a non-existent license, those defenses fail as a matter of law.

The "license" at issue is the January 14, 2006 one-page agreement ("Agreement") between the parties memorializing eleven points of agreement. The relevant portion is Paragraph 5, which reads: "CAMP Scandinavia agrees to terminate any and all present & future legal action regarding patent issues surrounding the AMAFO/Sure Step Matrix as part of this agreement." It is followed by the

handwritten addendum, "Equally, Trulife agrees not to challenge the ToeOff patents." Agreement at 1.

Plaintiff Camp contends this paragraph of the Agreement covers only the Sure Step Matrix, not any future permutation of that product. Defendant Trulife argues that because the "Matrix Max," a future modification of the Matrix, had not yet been invented, it could not have been included in the Agreement.

## **LAW AND ANALYSIS**

A patent holder has the right to exclude others from making, using, or selling what is described in the patent's claims. However, those rights may be waived in whole or in part by issuing an express license, which is sometimes referred to as a covenant not to sue. McCoy v. Mitsuboshi Cutlery, Inc., 67 F.3d 917, 920 (Fed. Cir.1995). A patent holder may restrict the scope of a patent license based on any condition within the scope of its patents. E. Bement & Sons v. National Harrow Co., 186 U.S. 70, 91 (1902). The existence of a license is an affirmative defense to a claim of infringement, assuming that the scope of the license includes the alleged infringement. Carborundum Co. v. Molten Metal Equip. Innovations, Inc., 72 F.3d 872, 878 (Fed. Cir. 1995).

An express patent license is a contract "governed by ordinary principles of state contract law." Power Lift, Inc. v. Weatherford Nipple-Up Sys., Inc., 871 F.2d 1082, 1085 (Fed. Cir. 1989). "Under Michigan law, contract interpretation is controlled by the laws of the place where the last act necessary to make it a binding contract took place." C.E. Hale Corp. v. Butler Polymet, Inc., 869 F.2d 1489 (6th Cir. 1989). In this case, the 2006 Agreement was finalized and executed in California. Under California law, when an agreement has been reduced to writing, the parties' intention is to be ascertained from the writing alone, if possible, and the written words are to be

understood in their ordinary sense absent some special or technical usage. See, Cal. Civ. Code §§ 1639, 1644.

When a contract provision is written in terms of a specific, named product, the scope of that provision is limited to that product. See Panduit Corp. v. HellermanTyton Corp., 451 F.3d 819, 827-28 (Fed. Cir. 2006). In Panduit, a contract provision was written in terms of a specific product. The court held that such a provision was unambiguous and thus could not be read to include any other product, even one with merely "colorable" differences from the listed product. Id.

Although most instances of patent licensing involve express licenses, a license maybe implied when a patent owner's conduct leads the accused infringer to reasonably believe that the owner has consented to what otherwise would be infringement. See, Stickle v. Heublein, Inc., 716 F.2d 1550, 1559 (Fed. Cir. 1983). However, "an implied license cannot arise out of the unilateral expectations or even reasonable hopes of one party. One must have been led to take action by the conduct of the other." Id. Moreover, a license may not be implied beyond the scope of an express license. See Henry J. Kaiser Co. v. McLouth Steel Corp., 175 F. Supp. 743, 749 (E.D. Mich.), aff'd, 277 F.2d 458 (6th Cir. 1960). In Kaiser, the patent holder granted an express six-month license. The court held that the defendant could not claim any implied license for some longer term.

Laches and equitable estoppel are affirmative defenses to claims of patent infringement. A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1029 (Fed. Cir. 1992). To establish equitable estoppel, a defendant must show that: 1) the patentee's conduct misled the defendant to reasonably believe the patentee did not intend to enforce its patent against the defendant; 2) the defendant relied on that conduct; and 3) the defendant would be materially prejudiced by that reliance if the patentee could proceed with that claim. Id. To establish laches, a defendant must

prove that: 1) the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant, and 2) the delay materially prejudiced the defendant. Id.

In this case defendant Trulife's alleged basis for its equitable estoppel and laches defenses is the 2006 Agreement. Trulife claims, "As part of the 2006 agreement, Camp agreed to terminate all present and future legal action regarding patent issues surrounding Trulife's importation and sale of Trulife's Ankle/Foot Orthotic Products that may be covered by the claims of the '515 patent." Def's Ans. Interrog. However, Trulife's position is contradicted by the express terms of the Agreement, which granted a patent license for the AMAFO/Sure Step Matrix, one specific product. Trulife argues that the use of the word "surrounding" in Paragraph 5 of the Agreement was intended to mean the AMAFO/Sure Step Matrix and other products that may follow it, including those "surrounding" that product. The court in Panduit, though, held that the contract provision listing a specific product–the defendant's Multi-Channel Raceway Side Electric Box–was unambiguous and could not be read to cover any other products, even minor variations with "merely colorable" differences. In this case the Matrix MAX, is not merely a "colorable" difference from the Matrix. Instead, the two are marketed under different names, sold under different catalog numbers, are functionally and structurally different, and recommended for different purposes.

Defendant Trulife contends that the Matrix MAX is a member of an AMAFO/Sure Step Matrix "family" of products. In the 2006 Agreement, the parties agreed to exclusive distribution of the "ToeOFF product *family*" and agreed to honor the warranties of those products in Paragraphs 2, 3, and 10. (Emphasis added.) However, because the word "family" was used in conjunction with the ToeOFF products, it is clear the parties agreed to cover more than one product. The fact that

they failed to use the word "family" along with Matrix, knowing that permutations of the original were as likely as with other orthotic products, shows, if any thing, that the agreement was intended to cover <u>only</u> the Matrix that existed at the time of the Agreement. If the parties had intended to cover future modifications or variations, they could have done so because they <u>did</u> do so for the ToeOFF line. Moreover, Trulife drafted the 2006 Agreement; therefore, any ambiguity in the agreement must be construed against Trulife. Cal. Civ. Code s 1654.

Defendant Trulife also argues that the court must consider extrinsic evidence demonstrating that the parties' intent was to construct a broad covenant not to sue. Again though, there is an express agreement that specifically covers only the Matrix, not other Matrix-like products. Therefore, the court finds that defendant Trulife's affirmative defenses of laches and equitable estoppel fail as a matter of law; and the court will grant plaintiff Camp's motion for partial summary judgment.

In its April 6, 2009 motion to amend the answer, Trulife seeks to add a contract defense based on the 2006 Agreement. However, Trulife concedes in its reply brief that if the court grants Camp's motion for partial summary judgment and finds that "the Agreement does not cover the Matrix Max, Trulife's contract defense would fall as well." Reply br. at 3. The court will deny the motion to amend.

## **ORDER**

It is hereby **ORDERED** that Plaintiffs' January 23, 2009 motion for partial summary judgment is **GRANTED.**

It is further **ORDERED** that Defendants' April 6, 2009 motion to amend its answer is **DENIED.**

s/John Corbett O'Meara<br>United States District Judge

Date: May 15, 2009


I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, May 15, 2009, by electronic and/or ordinary mail.

s/William Barkholz<br>Case Manager